UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ELIJAH BUCKLEY,

    Plaintiff,

v.                                                         Case No. 6:08-cv-514-Orl-35KRS

OFFICER DANIELLE GATELY,

    Defendant.

_____/

## ORDER GRANTING SUMMARY JUDGMENT

This case is before the Court on Defendant's Motion for Summary Judgment (Doc. No. 22). In accordance with *Griffith v. Wainwright*, 772 F.2d 822 (11th Cir. 1985), Plaintiff was notified by Order of the Court of his right to respond to Defendant's motion for summary judgment and to file affidavits and other documents in opposition to the motion (Doc. Nos. 24 and 25), and he subsequently filed a response (Doc. No. 26).

*I.*    *Factual Background*

Plaintiff, a prisoner in the State of Florida, filed an amended complaint (Doc. No. 6) pursuant to 42 U.S.C. § 1983, alleging that, on July 30, 2007, Defendant Danielle Gately, a police officer with the Orlando Police Department, searched his backpack without his permission, which violated his Fourth, Sixth, and Fourteenth Amendment rights. Plaintiff states that Defendant stopped him "in the middle of Division St.," made him "sit on the curb of Division and 18th Street" and went through his backpack without permission and without

providing *Miranda*[1] warnings. Plaintiff was charged with possession of drug paraphernalia and burglary tools and placed under arrest.

In his deposition, Plaintiff testified that, on July 30, 2007, he was suffering from extreme pain in his wrist, and, in an effort to alleviate the pain, he smoked crack cocaine all day. (Deposition of Elijah Buckley, at 9.) Between 5:00 p.m. to 5:30 p.m. that day, he was walking along 18th Street and found wire hanging on the outside of a dumpster and pulled it out. *Id.* at 10-11. As he was walking on 18th Street toward Division Street, Defendant stopped him in the middle of the street and asked him what he was doing in the area. *Id*. at 11. Plaintiff responded that he had found some wire in the dumpster but was not sure exactly which dumpster he found it in. *Id*. Defendant asked him to sit on the curb, looked in his backpack, and found a crack stem and needlenose pliers. *Id*. at 13. She then told him to stand up and proceeded to search his person. *Id*. He asked why he was being arrested, and, according to Plaintiff, she replied "I'm arresting you for possession of paraphernalia and some needle nose pliers." *Id*.

When questioned further about the search, the following colloquy took place:

Q    Okay. Did she ask you if she could search your backpack?

A    Well, I'm going to be frank with you. If she did, I wouldn't have remembered it no way because I was under the influence of all that [sic] drugs at the time.

Q    You don't know one way or another whether she asked you if she could search the backpack?

A    Well, that's the way I will have to do it. I wouldn't do it no other way.

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

> Q      All right. I'm just trying to make sure I have your answers straight, that you just wouldn't have remembered if she had asked you?
>
> A      Yes, ma'am, that's exactly what I'm saying.

*Id.* at 13. He later repeated this testimony by stating he did not know for sure whether she asked for permission to look in his backpack. *Id*. at 28.

Defendant submitted her own affidavit, offering the following version of events: On July 30, 2007, she responded to a Sonitrol alarm at Elite Electric. Affidavit of Defendant at 1-2. She observed Plaintiff walking toward Division Street and away from Elite Electronic. *Id*. at 2. She exited her vehicle and asked Plaintiff what he was doing in the area, and he responded that he had found some aluminum wire in a dumpster and that he had moved it to another dumpster so that he could come back later to retrieve it. *Id*. at 2. She asked Plaintiff to sit on the curb and specifically asked him permission to search his backpack. *Id*. Plaintiff granted her permission to do so by stating "Yes, go ahead." *Id*. Defendant did not believe that Plaintiff was under the influence of any narcotic or any other intoxicant, but she observed that he was sweating profusely. *Id*. She inspected the backpack and found needlenose pliers, a screwdriver, and a crack pipe. *Id*. She arrested Plaintiff for possession of burglary tools, possession of drug paraphernalia, and burglary of an unoccupied structure. *Id*.

## II.     Legal Standards

### A.     *Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if it appears that there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing that

there is no genuine issue of material fact lies on the moving party, and it is a stringent one. *Celotex Corp. V. Catrett* 477 U.S. 317, 323 (1986). Rule 56(e) further provides in pertinent part as follows:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth facts showing there is a genuine issue of fact for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Essentially, the nonmoving party, so long as that party has had an ample opportunity to conduct discovery, must come forward with affirmative evidence to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If, after the movant makes its showing, the nonmoving party brings forth evidence in support of its position on an issue for which it bears the burden of proof at trial that "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (citations omitted).

### B. Qualified Immunity Standard

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 129 S.Ct. 808, 815 (2009) (citation omitted) (quotation omitted). "The purpose of qualified immunity is to allow officials to carry out discretionary duties without the chilling fear of personal liability or harrassive litigation, protecting from suit all but the plainly

incompetent or one who is knowingly violating the federal law." *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (citations omitted) (quotations omitted).

The Court is obliged to grant qualified immunity unless the plaintiff can demonstrate first, that the facts viewed in the light most favorable to the plaintiff establish a constitutional violation by the officers; and, second, that it was clearly established at the time of the incident that the actions of the defendant were unconstitutional. *See id.* "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 129 S.Ct. at 818.

## III.   Analysis

### A.   The Search of Plaintiff's Backpack

Although not clearly stated, Plaintiff's amended complaint appears to allege two constitutional violations: 1) violation of his Fourth Amendment protection against unlawful search and seizure; and 2) violation of his right to counsel and privilege against self-incrimination.

To state a claim under 42 U.S.C. § 1983 for a Fourth Amendment violation, a plaintiff must allege that the defendants conducted an unreasonable search. *Samson v. California*, 547 U.S. 843, 848 (2006). Plaintiff is basing this claim on the search performed by Defendant of Plaintiff's backpack, alleging specifically that he was not advised of his *Miranda* rights prior to the search and did not otherwise consent to the search.

Voluntary consent will transform a warrantless search into a reasonable search. *Georgia v. Randoph*, 547 U.S. 103, 128 (2006). Taking the facts in the light most favorable

to Plaintiff, Defendant has shown that Plaintiff voluntarily consented to the search of his backpack. Defendant stated in her affidavit that Plaintiff consented to the search, and Plaintiff specifically testified at his deposition that he could not remember and was unsure whether Defendant asked him for consent to search his backpack because he was under the influence of drugs. There is no evidence that the consent resulted from coercion or duress. Hence, the only evidence concerning the voluntariness of the search is that presented by Defendant, and it conclusively demonstrates that the search was constitutionally reasonable, that is, it was undertaken with the voluntary consent of the Plaintiff. As a result, Defendant's warrantless search of the backpack pursuant to Plaintiff's consent did not violate his Fourth Amendment right, and Defendant is entitled to qualified immunity from Plaintiff's Fourth Amendment claim.

### B. Plaintiff's Right to Counsel and Privilege Against Self-Incrimination

Although not entirely clear, it appears that Plaintiff also alleges a violation of his Fifth, Sixth, and Fourteenth Amendment rights as a result of Defendant's failure to provide *Miranda* warnings upon initially stopping Plaintiff.

Consistent with the Fifth Amendment's prohibition against self-incrimination, which includes the right to have an attorney present during a custodial interrogation, the United States Supreme Court has ruled that suspects may not be subjected to "custodial interrogations" unless they have been informed of their *Miranda* rights.[2] In determining whether a person is "in custody," the question is whether, examining the totality of the

---

[2]Prior to being questioned, suspects in police custody must be advised of their right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney at the interrogation. *Miranda*, 384 U.S. at 444.

circumstances, a reasonable person in the plaintiff's position would have felt at liberty to terminate the interrogation and leave. *See Thompson v. Keohane*, 516 U.S. 99, 112 (1995).

In the present case, Defendant approached Plaintiff while he was walking along a public street and asked him an open-ended question: What are you doing in the area? Plaintiff volunteered a response: He had found wire and moved it to another location. This encounter took place on a public street, where it was visible to anyone who may have been nearby, and Plaintiff was sitting on the curb at the time. Plaintiff was not handcuffed or detained in any way during the conversation. *See Terry v. Ohio*, 392 U.S. 1, 30-31 (1968) (holding that when an officer has "reasonable suspicion" to believe that the stopped individual has committed wrongdoing, the officer may conduct a limited seizure and briefly detain a person for investigative purposes). Hence, there was a consensual encounter between Defendant and Plaintiff, in which Plaintiff freely volunteered a response to an open-ended question in a non-custodial situation.

To the extent that this claim is based upon Plaintiff's belief that he should have been given *Miranda* warnings, the Court finds that there was no custodial setting, and Plaintiff was not undergoing a custodial interrogation. Thus, the right to counsel and the privilege against self-incrimination did not apply in this factual situation. The Court therefore cannot conclude that Plaintiff had a clearly established constitutional right to be administered *Miranda* warnings, and there was no violation of Plaintiff's Fifth, Sixth, or Fourteenth Amendment rights. Hence, Defendant is entitled to qualified immunity.

*IV.  Conclusion*

The Court finds that Defendant is entitled to summary judgment as a matter of law on Plaintiff's claims.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment (Doc. No. 22, filed December 15, 2008) is **GRANTED.** The Clerk of the Court is directed to enter a judgment in favor of Defendant and against Plaintiff.

2. The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** in Orlando, Florida, this 31st day of August 2009.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies to:
sa 7/22
Counsel of Record
Elijah Buckley